IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Annie Turner,<br><br>    Plaintiff,<br><br>v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>    Defendant. | No. 1:06-cv-00835-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

**PRELIMINARY STATEMENT**

1.    This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2.    This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

## PARTIES

3.      Annie Turner is a Black employee of NGSS who has been employed by NGSS for over 32 years.

4.      NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5.      NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7.      Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8.      On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

## PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

    a) Dismissal of the class action allegations seeking compensatory and punitive damages;

    b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

    c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

    d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

    e) Dismissal of defendant LITTON INDUSTRIES; and

    f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Annie Turner's severed action was assigned the case number of 1:06-cv-00835-LG-RHW.

## FACTUAL STATEMENT
## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS. NGSS has intentionally implemented these policies and practices, among other ways, as follows:

    a) By failing to treat Blacks on an equal basis with Whites.

    b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

    c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

    d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race. Black employees are denied promotions despite their qualifications and years on the job. It

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21. Other than the two and a half months in 2005 during which she was a work leaderman, plaintiff has never been promoted in spite of Plaintiff's more than 32 years at NGSS. Plaintiff has applied for promotive positions, and has been informed by written communication that she was qualified for the various positions for which she has applied. Plaintiff was qualified for the positions for which she applied, but has never been selected. The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This has occurred in at least the following instances:

   a) On or about June 23, 1999, plaintiff applied for Labor Supervisor, a position for which Plaintiff was qualified, but for which she was not selected.

   b) In approximately 1982, Plaintiff applied for heat straightener, a position for which Plaintiff was qualified, but for which she was not selected because of her race.

22. Plaintiff has worked for 32 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that she has been interested in being selected for the position of "leaderman" or "half-hat." However, in spite of her 32 years at NGSS, plaintiff was only selected for the position one time for a two and a half month period, after which she was demoted. Plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known. Plaintiff has not been informed in any way that she was not qualified for the position of "leaderman" or "half-hat." The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Other than a period of two and a half months, during which Plaintiff was a leaderman, and then demoted, Plaintiff was not promoted in spite of Plaintiff's 32 years at NGSS. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, Plaintiff has not applied for promotive positions for which she was qualified, and plaintiff has never been selected for promotion to any such position. Plaintiff has also observed that the availability of positions was not always publicized. Plaintiff has complained about not being promoted. The means used to determine that plaintiff would not be selected for a position, for which she was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff has been laid off at times during which similarly situated White co-workers with fewer years of seniority were not laid off. Plaintiff was informed that the reason she was laid off was due to a reduction in force. White employees with fewer years of seniority were not laid off. Plaintiff has been laid off under such circumstances in the following instances

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

a) In 1980, Plaintiff was laid off from the position of laborer for six months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 6 years, and in the department was 6 years.

b) In 1982, Plaintiff was laid off from the position of laborer for six months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 8 years, and in the department was 8 years.

c) In 1985, Plaintiff was laid off from the position of laborer for three months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 11 years, and in the department was 11 years.

d) In 1986, Plaintiff was laid off from the position of laborer for three months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 12 years, and in the department was 12 years.

e) In 1987, Plaintiff was laid off from the position of laborer for four months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 13 years, and in the department was 13 years.

f) In 1988, Plaintiff was laid off from the position of laborer for 12-15 months. At the time Plaintiff was laid off, Plaintiff's seniority in the company was 14 years, and in the department was 14 years.

25. Plaintiff has been subject to disparate treatment with regard to job assignment and transfers. In 2003, Plaintiff made her supervisor(s) aware that she wanted to take the map and observation test. Plaintiff was told by the course instructor that once she took the map and observation test, she would be able to get a transfer to a different department. Plaintiff successfully passed the test. Despite her inquiring about transfers on numerous occasions, Plaintiff never heard back from the instructor and was never offered a transfer. In 2003, Plaintiff again requested map reading and observation testing. A white female instructor told Plaintiff she did not have to be tested again because she had taken the test already. Plaintiff was nonetheless never offered the

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

transfer. Furthermore, the selection process for obtaining transfers upon passing the map and observation test has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

26. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. Plaintiff has been assigned to such employment environments in the following instances:

> a) Plaintiff has been forced to work in either the hot sun or in the cold while similarly situated White employees were allowed to work in more comfortable conditions. In or around 1997-1998, Plaintiff complained to Bill Tanner about his refusal to give rain suits to the laborers. As a result of her complaints, Plaintiff was retaliated against and verbally abused by Tanner. Plaintiff was told by co-workers that Tanner made distasteful remarks about Turner in their presence, and that he referred to her as "Black-ass cookie."
>
> b) Plaintiff has been assigned to Laborer Department, known to involve some of the dirtiest most difficult work in the shipyard. Sometimes workers in the Laborer Department must lie on their stomach and\or kneel down to do the work, and are called upon to clean up human waste. Injuries and disease are more common in the Laborer Department because of the nature of the work.
>
> c) On one occasion, in or around 1986 or 1987, Plaintiff was working with two White women, a mother and daughter, shoveling mud. A white foreman came to the job site and told the White women that he could not have them doing this type of dirty work. He took both of the White women to work in the office and the Black women were left shoveling mud. Although plaintiff complained to the union, they did not address

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

her complaints.

    d)    On one occasion in 2000 or 2001, a White woman named Holly Bryant told plaintiff and plaintiff's coworkers that it was beneath her pride to clean toilets. Ms. Bryant's work was then transferred to a clean ship that was getting ready for sea trial. Plaintiff complained to Bill Tanner, but the problem was not addressed.

    e)    On another occasion in the early 1990s, Debra Bush, a White woman laborer, saw that all the laborers were given scrapers and asked to scrape mud and other material from the side of a rig. Ms. Bush refused to do this work and she left and came back with the White foreman, Rick Arseno, and Paint Supervisor Lucas. Mr. Arseno told Ms. Bush to go back to the wet dock to see L.C. Turner, who changed her assignment.

    f)    In 2005, Plaintiff complained to Phil Teel about the working conditions for the Labor Department. His response was "Just be happy you have a job."

    g)    African American laborers work in hazardous conditions without protective equipment or clothing. Between 1998 and 2002 Plaintiff was required to work on the Venezuelan Armada's LUPO class frigates while similarly situated White employees were either not assigned such work or would be allowed to remove themselves from that assignment. On information and belief, Plaintiff was forced to work amid Hepatitis C contamination on the LUPO class frigates. She was not provided with any protective clothing.

    27.    Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981. Such retaliation has occurred in the following instances:

    a)    On or about January 14, 2000, Plaintiff filed a charge of discrimination

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

       with the EEOC, as detailed in paragraph 6 *supra*. After that charge was filed, Plaintiff was moved around in the shipyard for no legitimate non-retaliatory reason. She also was labeled a "trouble maker."

b) After filing this lawsuit on or about March 21, 2001, Plaintiff was moved around a lot from ship to ship and from job to job and was given the dirtiest jobs.

c) In 2006, Plaintiff complained to David Cunningham about being moved around.

d) On March 27, 2003, Plaintiff complained to her union about unfair treatment. On March 28, 2003, the very next day, Plaintiff was moved off the ship to another location . Plaintiff then complained to Tom Stallworth and called the California hotline about being moved, but nothing was done.

e) Bill Tanner, the foreman transferred Plaintiff from job to job. When Plaintiff complained about being moved around, she was told that Bill Tanner wanted her moved. She was also told that Tanner referred to her as "Black-ass cookie."

f) Plaintiff said was denied the promotion to supervisor in 1999 in retaliation for complaining about conditions for Black workers.

    28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because Plaintiff believed it would be useless so to do, given the historical lack of

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

sufficient response on the part of NGSS.   Such exposure includes the following instances:

  a) In her thirty years working for NGSS, Plaintiff has seen graffiti with words to the effect of "Black nigger, go back to Africa" and "niggers' black babies need to be dead."  Plaintiff saw this type of graffiti in both the men's and women's restrooms.   Plaintiff saw a lot of this type of graffiti in 1997 and saw such graffiti through at least 1999.

  b) Plaintiff saw graffiti that was attempting to recruit for the Ku Klux Klan.

  c) Plaintiff has seen White co-workers wearing the rebel or confederate flag on their hats or clothing.  She has seen such flags continuing to the present day.  Plaintiff believes the flag is a symbol of hate and is constant reminder of some of the most racially cruel times in the south.

  d) In or about 1997 or 1998, Plaintiff saw offensive racially derogatory writings, depictions, and/or graffiti.  Bill Tanner, who was a Foreman at the time, was present and obviously observed offensive racially derogatory writings, depictions, and/or graffiti, but, to Plaintiff's knowledge, Tanner took no steps to remedy the situation.

  e) Plaintiff did not complain about the graffiti she saw because, based on NGSS's historical response, Plaintiff believed that the response would be insufficient to remedy the situation and because Plaintiff believed she would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the presence of the offensive racially derogatory writings, depictions, and/or graffiti because supervisors used the same restrooms.

 29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to nooses in a number of places at NGSS. NGSS knows or should have known about the presence of nooses, both actual and

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation. Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS. Such exposure includes the following instances:

      a) In 2000 Plaintiff saw a noose on LHD 7 and also on LHD 6. On LHD-6 Plaintiff saw a long noose hanging across a scaffold. Supervisors obviously observed the noose on the scaffolding, but to Plaintiff's knowledge took no steps to remedy the situation.

      b) Also in 2000, Plaintiff saw nooses when cleaning ships in bulkhead. She saw nooses at least two times and swept them up and put them in the trash.

      c) Plaintiff did not complain when she saw nooses because, based on NGSS's historical response, Plaintiff believed that the response would be insufficient to remedy the situation and because Plaintiff believed she would be subjected to retaliation for complaining. However, NGSS was or should have been aware of the presence of the noose because supervisors saw at least one of the nooses.

30. Plaintiff has been subjected to a hostile work environment based on Plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 27, incorporated as though fully set forth herein.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

32. Plaintiff has been subjected to a hostile work environment based on

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

plaintiff's race.  Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

33. The hostile work environment based on race to which Plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

34. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 28 through 33 incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

35. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, Plaintiff will be deprived of career opportunities, which Plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

36. No plain, adequate, or complete remedy at law is available to Plaintiff. The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately compensated by monetary relief.  Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

37. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

39. Defendant has intentionally failed to provide Plaintiff equal employment opportunities by discriminating against Plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of Plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates Plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against Plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of Plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates Plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

42. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

43. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

    a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

  set forth in paragraphs 20 through 34 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 20 through 34 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

   interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated:  September 29, 2006       SANDRA JARIBU HILL, Esq.
                       Mississippi Workers' Center for
                           Human Rights

                       WILLIAM C. MCNEILL, III, Esq.
                       The Legal Aid Society-Employment
                          Law Center

                       Counsel for Plaintiffs


                    By:    /s/ William C. McNeill, III
                        WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following:  Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552


   /s/ Laurel Kapros
Laurel Kapros

Plaintiff Annie Turner's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00835-LG-RHW