IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANNIE TURNER | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV835-HSO-JMR |
| | § | |
| HUNTINGTON INGALLS, INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary

Judgment filed by Defendant Huntington Ingalls[1] ["Ingalls"] on May 16, 2011 [399].

On June 13, 2011, Plaintiff Annie Turner ["Turner"] tendered a Response [404,

405]. Ingalls filed a Rebuttal on June 28, 2011 [407]. After due consideration of the

record, the submissions on file, and the relevant legal authorities, the Court finds

that because Turner is unable to maintain her claims as a matter of law, Ingalls is

entitled to summary judgment.

I. FACTS AND PROCEDURAL HISTORY

A.   Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a

First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11)

individuals and the Ingalls Workers for Justice as Plaintiffs. Turner was not a

---

[1]Counsel for Defendant filed a Motion to Substitute Party on June 7, 2011
[403-1]. The Court granted said Motion as unopposed and Defendant's name in the
style of the case was changed from "Northrop Grumman Shipbuilding, Inc." to
"Huntington Ingalls, Incorporated."

named Plaintiff in the original suit.[2]  Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  Subsequently, Ingalls' Motion to Sever was granted by Order entered August 17, 2006 [360], which required Plaintiffs to file separate complaints.  Following severance of her claims, Turner filed a  Second Amended Complaint [362] on September 29, 2006.

In 2008, the Court entered an Order administratively closing all Ingalls cases while the claims of all but fourteen (14) Ingalls plaintiffs were heard and resolved through arbitration.  Turner was one (1) of the fourteen (14) who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16, 2010, the above captioned cause was reopened.  Following a status conference held on August 23, 2010, the Court determined that all discovery had been completed,

---

[2]Turner is listed as one of one hundred forty-three (143) individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.  *See* EEOC Charge [404-1].

and set this case for trial to commence on the Court's October 2011 trial calendar.

B.   Factual Background

Annie Turner was hired by Defendant in its shipyard in 1974 as a laborer and has worked for Defendant for over thirty-two years.  May 23, 2006, Dep. of Annie Turner, at p. 89 att. as  Ex. "F" to Def.'s Mot. for Summ. J.   As of May 2011, Turner still worked at the shipyard.  Def.'s Mem. Br. in Supp. of Mot. for Summ. J., at p. 1; May 23, 2006, Dep. of Annie Turner, at pp. 28, 32  att. as Ex. "1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.

In her Amended Complaint, Turner seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Compl., ¶¶ 17-19.  Turner alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *Id.*, ¶ 1. In addition to injunctive and declaratory relief, Turner seeks compensatory and punitive damages.  *Id.*

In its present Motion, Defendant moves the Court to grant summary judgment on all claims asserted in Turner's Complaint.  Defendant contends that many of Turner's discrimination claims are barred by the applicable statutes of limitations, and that it is otherwise entitled to judgment as a matter of law on Turner's remaining claims.

## II. <u>DISCUSSION</u>

A.    <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure states that the Court shall grant summary judgment on each claim or defense on which summary judgment is sought if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Id*.  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.

*Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).
Where "the summary judgment evidence establishes that one of the essential
elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all
other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v.
Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.   Applicable Statutes of Limitations

Turner's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42
U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are
discussed below.

1.   Title VII

"Title VII requires persons claiming discrimination to file a charge with the
EEOC within 180 days after the allegedly discriminatory practice occurs and this
period begins to run from the time the complainant knows or reasonably should
have known that the challenged act has occurred." *Vadie v. Miss. State University*,
218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the
filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit
in federal court, it is a requirement that is similar to the statute of limitations, and
is therefore subject to the doctrines of waiver, estoppel, and equitable tolling.  *Cruce
v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a
plaintiff cannot sustain a claim under Title VII for events which occurred more than
180 days before the filing of the charge of discrimination, absent a showing of
waiver, estoppel, and/or equitable tolling.  *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, lay-off, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts.").  The parties have not briefed the continuing violation theory.  However, because Turner has raised the continuing violation doctrine in her Complaint,[3] the Court will address it.

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances."  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001).  It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation."  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)).  This court has looked

---

[3]"The hostile working environment based on race to which Turner has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981."  Compl., ¶ 33.

> to at least three factors in determining whether acts are sufficiently
> related to constitute a continuing violation: (1) whether the alleged acts
> involve the same type of discrimination, tending to connect them in a
> continuing violation; (2) whether the acts are in the nature of recurring
> events, or are more in the nature of isolated events; and (3) whether the
> act or acts have the degree of permanence that should alert an employee
> to assert his rights. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.
> 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2
(5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile
work environment cases, and the burden remains on the employee to demonstrate
an organized scheme led to and included the present violation." *Celestine*, 266 F.3d
at 352. With respect to discrete acts of discrimination, *Morgan* held that
application of the continuing violation theory to these types of claims depends on
the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even
> when they are related to acts alleged in timely filed charges. Each
> discrete discriminatory act starts a new clock for filing charges alleging
> that act. The charge, therefore, must be filed within the 180- or 300-day
> time period after the discrete discriminatory act occurred. The existence
> of past acts and the employee's prior knowledge of their occurrence,
> however, does not bar employees from filing charges about related
> discrete acts so long as the acts are independently discriminatory and
> charges addressing those acts are themselves timely filed. Nor does the
> statute bar an employee from using the prior acts as background evidence
> in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not
apply to Title VII claims alleging discrete discriminatory acts arising outside the
applicable statutory time period. Therefore, in order to timely file suit under Title

VII, the charge must be filed within 180 days of the alleged discrete discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The time limitations period set forth in Title VII commences with the date of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980)(holding that the present day effects of past discrimination are not actionable under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.").

The EEOC charge which led to this litigation was signed on January 14, 2000, and received by the EEOC on January 28, 2000. Charge of Discrimination, attached as Ex. "C" to Def.'s Mot. for Summ. J. Defendant maintains that the date filed is January 14, 2000, and that Turner cannot recover under Title VII for alleged discrimination or harassment occurring before July 18, 1999. Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 2. However, there is Fifth Circuit precedent indicating that the filed date would be January 28, 2000, making the cutoff date August 1, 1999. *Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42 (5th Cir. 1985) (charge is "filed" under Title VII when it is received by EEOC) (citing 29 C.F.R. § 1601.13(a)). The Court need not resolve this issue since, regardless of which date is used, the result here would not change. Using the earlier date urged by Defendant, which is more favorable to Turner, Turner cannot recover under Title VII for any alleged discrete discriminatory acts which occurred before July 18, 1999. *See Cruce*, 703 F.2d at 863-64. Turner further bears the

burden of demonstrating that the continuing violation doctrine is applicable to any of her claims.  *Celestine*, 266 F.3d at 352.

2.   Section 1981

Claims which assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable to claims raised under Title VII, with the exception that Section 1981 claims do not require exhaustion of remedies.  *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its own statute of limitations, the Supreme Court has determined that certain claims brought pursuant to Section 1981, namely those made possible by a post-1990 Congressional enactment, are subject to the federal four year catch-all statute of limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Pre-existing causes of action are subject to a "borrowed" state limitations period, or the most analogous state tort statute of limitations.  *Id.*; *see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir. 2008).

Defendant argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply to Turner's claims for denials of promotions, which would be three years, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658.  Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if

-9-

the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an opportunity for a new and distinct relationship between the employee and the employer, making it subject to the shorter Mississippi state statute of limitations. *See Jones*, 541 U.S. at 382; *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (applying Louisiana's one-year prescriptive period for tort actions to independent contractor's Section 1981 claim for failure to enter into a new contract with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns on whether the promotion was an opportunity for a new and distinct relationship between the plaintiff and his employer.  If the promotion would give rise to such a new relationship, the one year period of Article 3492 is applicable.  If the circumstances of the promotion would not result in a new and distinct relationship between the plaintiff and the City-Parish, then the four year prescriptive period under federal law would apply.").  It is not clear in this case whether the nature of the changes in positions allegedly sought by Turner involved the opportunity to enter into a new contract with Defendant.  Out of an abundance of caution, the Court will apply the longer four year limitations period.[4]  Because the original

---

[4]Applying either the four year federal or the three year Mississippi statute of limitations to the facts of this case does not change the outcome.

Complaint in this action was filed on March 21, 2001, Turner cannot recover under

Section 1981 for any acts occurring prior to March 21, 1997.

C.    Turner's Individual Claims

Turner's individual racial discrimination claims fall into the following

categories:  (1) denial of promotions; (2) denial of work leaderman opportunities; (3)

denial of job assignments and transfers; (4) improper layoffs; (5)  "racial job

tracking"; (6) hostile work environment; and (7) retaliation.

1.    Denial of Promotions

Turner specifically charges that she has applied for certain promotive

positions, and although a qualified 32 year employee, she was not selected due to

her race.  Compl., ¶¶ 17, 21-23.  Turner identifies the following instances where this

allegedly occurred:

> a) On or about June 23, 1999, Plaintiff applied for Labor Supervisor, a
> position for which Plaintiff was qualified, but for which she was not
> selected.
> b) In approximately 1982, Plaintiff applied for heat straightener, a
> position for which Plaintiff was qualified, but for which she was not
> selected because of her race.

Compl., ¶ 21(a)-(b).

Turner's complaint about the 1982 promotion clearly predates the cutoff in

this case for statute of limitations purposes under both Title VII and Section 1981.

Defendant is entitled to summary judgment on this specific denial of promotion

claim.  With regard to her June 23, 1999, claim, it falls outside the July 18, 1999,

statute of limitations period for Title VII, but is timely under Section 1981, as it

occurred after March 21, 1997.  Turner must establish a *prima facie* case of

discrimination for this alleged failure to promote.   In order to do so, Turner must

show each of the following four elements: 1) that she is within a protected class; 2)

that she was qualified for the position sought; 3) that she was not promoted; and 4)

that the position was filled by someone outside the protected class.  *Oden v.*

*Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (citing *Blow v. City of*

*San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)).

There is no dispute in this case that Turner is a member of a protected class.

However, Turner has not proffered any evidence that this position was filled by

someone outside the protected class.  Thus, she is unable to establish a *prima facie*

case of discrimination.  *See Oden*, 246 F.3d at 468.  In fact, the record reflects that

three African-American employees were selected for the promotions at issue.  May

23, 2006, Dep. of Annie Turner, at p. 52-54,  att. as  Ex. "A" to Def.'s Mot. for Summ.

J.; Apr. 20, 2011, Dep. of Annie Turner, at p. 53-57,  att. as  Ex. "B" to Def.'s Mot.

for Summ. J.  Summary judgment is appropriate as to these claims.

2.    Denial of Work Leaderman Opportunities

Turner claims that she was denied opportunities for work leaderman

positions throughout her employment with Defendant.  Compl., ¶¶ 22-23.  To

establish a *prima facie* case of discrimination on this claim, Turner must show (1)

that she is a member of a protected class; (2) that she was qualified for his position;

(3) that she suffered an adverse employment action; and (4) that other, similarly

situated co-workers outside the protected class were treated differently.  *Hart v. Life*

*Care Center of Plano*, 243 F. App'x 816, 818, 2007 WL 1855136, *1 (5th Cir. 2007)

(citing *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512–13

(5th Cir. 2001)).  "[F]or all Title VII claims, '[a]dverse employment actions include

only ultimate employment decisions such as hiring, granting leave, discharging,

promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th

Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th

Cir. 2002)).

>    Paragraph 23 of Turner's Complaint states as follows:
>
> [o]ther than a period of two and a half months, during which Plaintiff was
> a leaderman, and then demoted, Plaintiff was not promoted in spite of
> Plaintiff's 32 years at NGSS. Plaintiff has observed both that Black
> employees are not promoted in spite of their qualifications and seniority
> as well as the lack of qualifications of White employees who have been
> promoted, and, therefore, Plaintiff has not applied for promotive positions
> for which she was qualified, and plaintiff has never been selected for
> promotion to any such position. Plaintiff has also observed that the
> availability of positions was not always publicized. Plaintiff has
> complained about not being promoted.

Compl., ¶ 23.

>    However, Turner acknowledged that in 2005, she served in this capacity for 2

½ months.  Compl., ¶ 23; May 23, 2006, Dep. of Annie Turner, at pp. 48-49, att. as Ex.

"1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.   When asked about the work leaderman

position in her deposition, Turner acknowledged that she had not inquired or requested

to be considered for this position.

> Q:   Have you ever asked anybody in supervision in your department if you
>      could be a work leaderman?
> A:   No.
> Q:   Have you ever asked anybody in supervision in your department what
>      you needed to do to be considered to be a work leaderman?
> A:   No.

May 23, 2006, Dep. of Annie Turner, at p. 50, att. as Ex. "A" to Def.'s Mot. for Summ. J.

> Q:    Since '06, have you asked anyone to be a work leaderman?
> A:    No.

Apr. 20, 2011, Dep. of Annie Turner, at p. 61, att. as Ex. "B" to Def.'s Mot. for Summ. J.

Turner offers no additional evidence in support of this claim beyond the bare allegations in her Complaint.   Turner has not carried her burden and summary judgment on this claim is appropriate.

### 3.    Denial of Job Assignments and Transfers

Turner alleges that she

> has been subject to disparate treatment with regard to job assignment and transfers. In 2003, Plaintiff made her supervisor(s) aware that she wanted to take the map and observation test. Plaintiff was told by the course instructor that once she took the map and observation test, she would be able to get a transfer to a different department. Plaintiff successfully passed the test. Despite her inquiring about transfers on numerous occasions, Plaintiff never heard back from the instructor and was never offered a transfer. In 2003, Plaintiff again requested map reading and observation testing. A white female instructor told Plaintiff she did not have to be tested again because she had taken the test already. Plaintiff was nonetheless never offered the transfer.

Compl.,¶ 25.

Turner must also satisfy the standard for a *prima facie* case of discrimination on this claim.   Turner must demonstrate that she was: (1) a member of a protected class; (2) qualified for the position at issue; (3) the subject of an adverse employment action; and (4) treated less favorably because she belonged to a protected class than similarly-situated employees who were not members of the protected class, under nearly identical circumstances.   *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir.

2009).

Of particular relevance here, Turner must show that she suffered an adverse employment action. *Okoye*, 245 F.3d at 512–13. The Fifth Circuit Court of Appeals employs the following interpretation of this element: "an adverse employment action consists of 'ultimate employment decisions' such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)). More specifically,

> Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action. *See Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001).

*Pegram,* 361 F.3d at 283; *see also Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

Reviewing the record before it, considering all undisputed facts, and resolving all disputed facts in Turner's favor, the Court cannot conclude that Turner has demonstrated that she suffered an adverse employment action based on her taking and passing a map test and thereafter not being transferred. There has been no objective showing of a loss in compensation, duties, or benefits due to Turner. She cannot make the necessary *prima facie* showing.

Even assuming the non-transfer was an actionable ultimate employment decision, Turner has provided no evidence that this was related in any way to her race. To establish a *prima facie* case of racial discrimination using indirect evidence, Turner must demonstrate, *inter alia,* that she was treated less favorably

because she belonged to a protected class than similarly-situated employees who

were not members of the protected class, under nearly identical circumstances.

*Alexander v. Brookhaven School Dist.*, 2011 WL 2222190, *4 (5th Cir. June 8, 2011).

Turner has not identified or presented any proof of a legally sufficient comparator,

and for this reason as well she has not made out a *prima facie* case of

discrimination.  Summary judgment is appropriate.

   4. <u>Improper Layoffs</u>

Turner alleges that she

has been laid off at times during which similarly situated White co-
workers with fewer years of seniority were not laid off.  Plaintiff was
informed that the reason she was laid off was due to a reduction in force.
White employees with fewer years of seniority were not laid off.  Plaintiff
has been laid off under such circumstances in the following instances:

  a) In 1980, Plaintiff was laid off from the position of laborer
for six months. At the time Plaintiff was laid off, Plaintiff's
seniority in the company was 6 years, and in the
department was 6 years.
  b) In 1982, Plaintiff was laid off from the position of laborer
for six months. At the time Plaintiff was laid off, Plaintiff's
seniority in the company was 8 years, and in the
department was 8 years.
  c) In 1985, Plaintiff was laid off from the position of laborer
for three months. At the time Plaintiff was laid off,
Plaintiff's seniority in the company was 11 years, and in the
department was 11 years.
  d) In 1986, Plaintiff was laid off from the position of laborer
for three months. At the time Plaintiff was laid off,
Plaintiff's seniority in the company was 12 years, and in the
department was 12 years.
  e) In 1987, Plaintiff was laid off from the position of laborer
for four months. At the time Plaintiff was laid off, Plaintiff's
seniority in the company was 13 years, and in the
department was 13 years.
  f) In 1988, Plaintiff was laid off from the position of laborer
for 12-15 months. At the time Plaintiff was laid off,

>       Plaintiff's seniority in the company was 14 years, and in the
>       department was 14 years.

Compl., ¶ 24.

Each of the layoffs about which Turner complains occurred well outside the
actionable time period for statute of limitations purposes.   This claim is time barred.

    5.   <u>Racial Job Tracking</u>

Turner further asserts that Defendant maintains "a practice of 'job steering',
resulting in Black employees being assigned to, and then denied the opportunity to
move out of dangerous, dirty, and generally less desirable work areas because of their
race." Compl.,  ¶ 17(k).  Turner contends that she "has been subjected to racial job
tracking that assigns Black employees . . .  at a disproportionate rate as compared to
White employees to the most undesirable, dirtiest and dangerous employment
environments in the workplace." Compl., ¶ 26.  Turner identifies the following specific
instances where this occurred:

> a) Plaintiff has been forced to work in either the hot sun or in the cold
> while similarly situated White employees were allowed to work in more
> comfortable conditions. In or around 1997-1998, Plaintiff complained to
> Bill Tanner about his refusal to give rain suits to the laborers. As a result
> of her complaints, Plaintiff was retaliated against and verbally abused by
> Tanner. Plaintiff was told by co-workers that Tanner made distasteful
> remarks about Turner in their presence, and that he referred to her as
> "Black-ass cookie."
>
> *   *   *
>
> c) On one occasion, in or around 1986 or 1987, Plaintiff was working with
> two White women, a mother and daughter, shoveling mud. A white
> foreman came to the job site and told the White women that he could not
> have them doing this type of dirty work. He took both of the White
> women to work in the office and the Black women were left shoveling
> mud. Although plaintiff complained to the union, they did not address her
> complaints.

-17-

d) On one occasion in 2000 or 2001, a White woman named Holly Bryant told plaintiff and plaintiff's coworkers that it was beneath her pride to clean toilets. Ms. Bryant's work was then transferred to a clean ship that was getting ready for sea trial. Plaintiff complained to Bill Tanner, but the problem was not addressed.

e) On another occasion in the early 1990s, Debra Bush, a White woman laborer, saw that all the laborers were given scrapers and asked to scrape mud and other material from the side of a rig. Ms. Bush refused to do this work and she left and came back with the White foreman, Rick Arseno, and Paint Supervisor Lucas. Mr. Arseno told Ms. Bush to go back to the wet dock to see L.C. Turner, who changed her assignment.

f) In 2005, Plaintiff complained to Phil Teel about the working conditions for the Labor Department. His response was "Just be happy you have a job."

g) African American laborers work in hazardous conditions without protective equipment or clothing. Between 1998 and 2002 Plaintiff was required to work on the Venezuelan Armada's LUPO class frigates while similarly situated White employees were either not assigned such work or would be allowed to remove themselves from that assignment. On information and belief, Plaintiff was forced to work amid Hepatitis C contamination on the LUPO class frigates. She was not provided with any protective clothing.

Compl., ¶ 26 (a)-(g).

Title VII's and Section 1981's statutes of limitations bar some of these claims. Turner cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can she recover under Section 1981 for any acts occurring before March 21, 1997.   Accordingly, those allegations contained in sections (c) and (e) are precluded by the applicable statute of limitations.

The remaining instances of alleged disparate treatment are not actionable, because Turner alleges no ultimate employment decision.  *Ellis v. Principi,* 246 F. App'x 867, 870, 2007 WL 2510620, *2 (5th Cir. 2007) (holding that allegation that

plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision).   Nor has Turner offered sufficient, competent summary judgment evidence to show that she was treated less favorably in this respect because of her race.  Defendant is entitled to summary judgment on this claim.

      6.    <u>Hostile Work Environment Claim</u>

      a.  <u>Turner's Factual Allegations in the Complaint</u>

Turner contends that throughout her employment with Defendant, she was subjected to racial hostilities and intimidation:

> Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at [the shipyard].

Compl., ¶ 28.

The Complaint also alleges that Turner observed nooses in the shipyard during the year 2000.  Compl., ¶¶ 28, 29.   Turner maintains that Defendant knew of these occurrences but failed to promptly prevent or correct them.  *Id.*, ¶ 28.

      b.  <u>Turner's Testimony and the Applicable Statutes of Limitations</u>

As discussed earlier herein, Turner cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can she recover under Section 1981 for any acts occurring before March 21, 1997.   In its Brief, Defendant maintains that the acts alleged to have created a hostile work environment which occurred before March 21, 1997, are time barred.  If  Turner's allegations of hostile work environment were viewed as discrete acts, then Defendant would be

correct in focusing its analysis only on those alleged acts which occurred within the relevant statute of limitations under Title VII and Section 1981.  However, Turner has raised the continuing violation doctrine in her Complaint.  Compl., ¶ 33.

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation."  *Celestine*, 266 F.3d at 352.  Turner has not demonstrated the applicability of the continuing violation doctrine in this case, and the Court is not persuaded that it should be applied based upon the facts here.  Moreover, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that [he] was a victim of actionable harassment, [he] can not reach back and base [his] suit on conduct that occurred outside the statute of limitations."  *Id.* (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)).

In her May 2006, deposition, Turner testified that the racist graffiti she observed was in 1997 and prior to 1999.  May 23, 2006 Dep. of Annie Turner, at. p. 71, att. as Ex. "1" to Pl.'s Resp. to Mot. for Summ. J.   However, in her most recent deposition, taken in April 2011, Turner stated that she has seen graffiti "three times since '06 . . . once in the bathroom and other two times on the walls and  stuff."  Apr. 20, 2011, Dep. of Annie Turner, at. p. 65 att. as Ex. "B" to Def.'s Mot. for Summ. J.

Turner's testimony is conflicting as to when she observed the nooses referenced in her Complaint.  In her April 2011 deposition, Turner stated that it was "probably sometime in the '90's" when she swept up a rope noose from the floors she was

cleaning.  Apr. 20, 2011 Dep. of Annie Turner, at pp. 81, 85 att. as Ex. "B" to Def.'s
Mot. for Summ. J.   In her earlier deposition, she stated that this occurred in 2000.
May 23, 2006, Dep. of Annie Turner, at. pp. 62 att. as Ex. "1" to Pl.'s Resp. to Mot. for
Summ. J.  She also testified that sometime during the '90's she observed a rope
hanging from the scaffold in the shipyard [LHD 6], but she never reported it or
complained to her supervisors about it.  Apr. 20, 2011, Dep. of Annie Turner, at. pp. 89-
90 att. as Ex. "B" to Def.'s Reply to Mot. for Summ. J.; May 23, 2006, Dep. of Annie
Turner, at. p. 63 att. as Ex. "1" to Pl.'s Resp. to Mot. for Summ. J.

Because Turner's testimony is somewhat vague as to the relevant time periods,
it is unclear whether these claims fall within or outside the July 18, 1999, statute of
limitations period for Title VII, and the March 21, 1997, statute of limitations for
Section 1981.  The Court will construe the facts in favor of Turner and assume that
these incidents are timely asserted.

c.  Turner's *Prima Facie* Case

To establish a *prima facie* case on a hostile work environment claim, Turner
must show that: (1) she belonged to a protected group; (2) she was subjected to
unwelcome harassment; (3) the harassment was based on race; (4) the harassment
affected a term, condition, or privilege of employment; and (5) the employer knew or
should have known of the harassment and failed to take prompt remedial action. *Ellis*,
246 F. App'x 867, 2007 WL 2510620, at *3 (citing *Frank v. Xerox Corp.,* 347 F.3d 130,
137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).
"For harassment on the basis of race to affect a term, condition, or privilege of

employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999). Thus, not only must Turner have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive. *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.*

There is no dispute that Turner belonged to a protected group. In her first deposition taken in 2006, Turner testified that she had not seen any offensive graffiti

since roughly 1999.  May 23, 2006, Dep. of Annie Turner, at. p. 60  att. as Ex. "1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.  In her later deposition, Turner stated that since 2006, she had observed three instances of racial graffiti: 1) once in the bathrooms and 2) two times on walls in the shipyard.  Apr. 20, 2011, Dep. of Annie Turner, at. p. 65 att. as Ex. "B" to Def.'s Mot. for Summ. J.  When pressed for details, Turner could not recall what the graffiti actually said other than "the N word."  Apr. 20, 2011, Dep. of Annie Turner, at. pp. 65, 69  att. as Ex. "B" to Def.'s Mot. for Summ. J.  Turner did not report or complain about these observations.  Apr. 20, 2011, Dep. of Annie Turner, at. pp. 65-67, 70  att. as Ex. "B" to Def.'s Mot. for Summ. J.; May 23, 2006, Dep. of Annie Turner, at. p. 59  att. as Ex. "1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.

The record reflects that Defendant posted placards in the bathroom for reporting instances of offensive graffiti.  Turner testified that she never called the number on the placard, as it would not have done any good.   Apr. 20, 2011, Dep. of Annie Turner, at. p. 70  att. as Ex. "B" to Def.'s Mot. for Summ. J.  When questioned further, she was unable to answer how she knew it would not do any good to call the number on the placard and complain.  *Id.*, at pp. 72-73.  Turner also testified that, since the placards and stainless steel doors were installed in the bathrooms, she has not seen any racist graffiti at the shipyard.  Apr. 20, 2011, Dep. of Annie Turner, at p. 73, att. as Ex. "B" to Def.'s Mot. for Summ. J.  There is also no evidence in the record that any racially offensive graffiti was directed at Turner.  Applying the *Harris* factors to this case, Turner has not shown the frequency or severity of any racially offensive graffiti which occurred within the relevant limitations periods.  This is insufficient to support

Turner's hostile work environment claim.

The testimony indicates that sometime "in the '90's" Turner observed "rope", which she claims were nooses, on roughly three occasions.  May 23, 2006, Dep. of Annie Turner, at. pp. 62,  att. as Ex. "1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.;   Apr. 20, 2011, Dep. of Annie Turner, at. pp. 90,  att. as Ex. "B" to Def.'s Mot. for Summ. J. Turner reported one incident to an unknown manager but did not know what was done about the rope or noose.  Turner did not report any of the other incidents to anyone at the shipyard.  *Id*., at p. 89-90; *see also* May 23, 2006, Dep. of Annie Turner, at. p. 62, att. as Ex. "1" to Pl.'s Resp. to Def.'s Mot. for Summ. J.

Based on the totality of the circumstances, the evidence does not create a material fact question precluding summary judgment on Turner's hostile work environment claim.  Accepting Turner's testimony as true, Turner has not shown that the alleged conduct rose to the level of sufficiently frequent occurrences which permeated the work environment with racially discriminatory intimidation, ridicule, and insult, to sufficiently support a hostile work environment claim.  *Harris*, 510 U.S. at 23.  Nor has she shown that Defendant knew or should have known about these alleged occurrences and failed to take prompt remedial action.

7.   Retaliation

Turner's Complaint generally alleges that Defendant has intentionally implemented policies and practices which result in systemic discrimination against her and other Black employees, "[b]y retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and

practices that permeate the work environment" at Defendant's shipyard.  Compl., ¶

17(I).   Turner also alleges that Defendant retaliated against her as follows:

> a) On or about January 14, 2000, Plaintiff filed a charge of discrimination with the EEOC, as detailed in paragraph 6 *supra*. After that charge was filed, Plaintiff was moved around in the shipyard for no legitimate non-retaliatory reason. She also was labeled a "trouble maker."

> b) After filing this lawsuit on or about March 21, 2001, Plaintiff was moved around a lot from ship to ship and from job to job and was given the dirtiest jobs.

> c) In 2006, Plaintiff complained to David Cunningham about being moved around.

> d) On March 27, 2003, Plaintiff complained to her union about unfair treatment. On March 28, 2003, the very next day, Plaintiff was moved off the ship to another location . Plaintiff then complained to Tom Stallworth and called the California hotline about being moved, but nothing was done.

> e) Bill Tanner, the foreman transferred Plaintiff from job to job. When Plaintiff complained about being moved around, she was told that Bill Tanner wanted her moved. She was also told that Tanner referred to her as "Black-ass cookie."

> f) Plaintiff said [sic] was denied the promotion to supervisor in 1999 in retaliation for complaining about conditions for Black workers.

*Id.*, ¶ 27 (a)-(f).

> In order to establish a *prima facie* case of retaliation, Turner must show:

> (i) she engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action.

*Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011)(citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

> In the present case, the record lacks sufficient summary judgment evidence that

Turner suffered an adverse employment action, or that any adverse employment action

occurred because she engaged in a protected activity.  This is fatal to her *prima facie* case.  *See Hernandez,* 641 F.3d at 129.  In addition, the record demonstrates that the supervisors Turner reported to during the relevant time periods were themselves African-American employees.  Apr. 20, 2011, Dep. of Annie Turner, at. pp. 53 att. as Ex. "B" to Def.'s Reply to Mot. for Summ. J.

As for her claim that Bill Tanner referred to her as a  "Black-ass cookie", in her deposition Turner denied hearing him say this, and she could not remember if anyone had ever told her that he had called her such a name.  Apr. 20, 2011, Dep. of Annie Turner, at. pp. 73-74  att. as Ex. "B" to Def.'s Mot. for Summ. J.  With regard  to her allegations that Defendant retaliated against her by moving her around, Turner acknowledged that part of her job as a laborer entailed being moved around:

> Q:     So every day you work in a different ship compartment or a different ship module?
> A:     Right. . . .  We have to go wherever they send us. . . .
> Q:     And has that been the case ever since you've been a ship cleaner?
> A:     Yes.
> Q:     And is that the case for all of the ship cleaners, all of you together?
> A:     We have to do what they say do, yes.
> Q:     And has that been the case ever since you've been a ship cleaner?
> A:     Yes.

Apr. 20, 2011, Dep. of Annie Turner, at pp. 42-43, att. as Ex. "B" to Def.'s Mot. for Summ. J.

Turner offers no other additional argument or evidence in support of her retaliation claim, beyond the bare allegations in her Complaint.  Turner has not  carried her summary judgment burden on this claim.

III.  <u>CONCLUSION</u>

For the foregoing reasons, Turner has not met her burden of demonstrating that her claims for denial of promotions, denial of work leaderman opportunities, denial of job assignments and transfers, improper layoffs, "racial job tracking," hostile work environment, and retaliation can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant's Motion for Summary Judgment [399] filed May 16, 2011, should be and hereby is **GRANTED,** and Turner's Complaint against Defendant should be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 16th day of September, 2011.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE